SUGG, Justice.
James Sample was convicted of manslaughter and sentenced to a term of fifteen years in the State Penitentiary by the Circuit Court of Holmes County.
Sample assigns eight errors which he contends require reversal of his conviction. Two assignments of error are combined and we will discuss only two additional assignments of error. The assignments of error are: (1) The trial court’s refusal to grant a continuance in order for Sample to retain private counsel denied him his constitutional right to effective legal counsel, and the trial court committed reversible error by failing to hold a hearing with respect to appellant’s motion for continuance, (2) the evidence did not establish corpus delicti because it did not exclude every reasonable hypothesis other than that of his guilt, (3) the court erred by granting State’s Instruction No. 7.
Sample was arrested on October 5, 1972 and shortly thereafter Calvin King was appointed to represent him. Sample told the court that he did not want King to represent him and in late October, 1972, he retained Andrew Gambriel as counsel. At the April 1973 term of court Sample petitioned for a continuance on the ground that Gambriel could no longer represent him. On April 19, 1973, a petition for a mental examination was granted by the court and the case was continued until the October 1973 term. Sample was returned to Holmes County from the Mississippi State Hospital at Whitfield on or about October 3, 1973, and his trial was set for October 23, 1973. On that date Gambriel informed the court that Sample no longer desired his services and wished to retain other counsel. The court released Gam-briel from the case, allowed Sample thirty days in which to hire counsel of his choice and granted a continuance until the next term. The next day Sample requested the court to appoint him an attorney from the Greenwood branch of Legal Services. On February 4, 1974, the court appointed John Barrett and Calvin King to represent Sample.
The attorneys met with Sample who informed them that he did not desire their services, but wanted other counsel. The court was immediately informed of this conversation but ordered the attorneys to represent Sample. The trial was set for April 25, 1974, and the two attorneys proceeded with the preparation of the case. On the day of trial, a motion was filed by John Walker, newly retained counsel for Sample, requesting a continuance until the October 1974 term so that he could prepare for trial. He set forth in the application for continuance that he was not prepared to represent Sample because he had been first contacted on April 22nd and retained on April 24th. The court denied the motion for continuance, but permitted Walker to make a statement into the record of the proof he would offer in support of the motion. The court proceeded to trial with Sample represented by Barrett and King. Walker did not participate in the trial.
*803 After tíie jury was selected the court permitted Barrett to make a statement for the record. Barrett stated that he and King visitfed the defendant in the Holmes County jail shortly after their appointment on February 4, 1974. He said the defendant stated in general terms that he was innocent of the charges, but did not desire to go into any specific discussion for the reason he did not want Barrett and King to represent him. Sample said that he would arrange to have his own counsel. Upon being instructed by the court to prepare for trial, Barrett said that he and King, as best they could with the cooperation of the defendant, investigated the case and talked with witnesses whom they were able to locate from outside sources. He stated that they attempted to communicate with the defendant on the morning of the trial and the defendant stated: “It looks like they are going to try me anyway — y’all go ahead — I am not going to have anything to do with it.” He further stated that Sample would not converse with them during the selection of the jury because he did not know anything about any of the prospective jurors.
The court then noted the previous appointments of attorneys in the case and, with reference to the motion for continuance filed by Walker on that date, stated that the motion was filed too late and was therefore denied. The court then stated:
All right, now the Court proposes to proceed with this case and the Court proposes to let Mr. Walker come in here and make any statement that he wants to make for the record. Ask him if he will come in now.
Walker and Sample’s niece were permitted to come into chambers and Walker made the following statement:
BY MR. WALKER:
John L. Walker of the law firm of Johnson & Walker of Jackson, Mississippi would state that he was present in the court today and ready to have a hearing with respect to this motion for continuance, and at such hearing he would have offered as a witness in support of said motion Mrs. Ella Mae Sample, niece of the defendant James Sample, who would have testified that she contacted me on April 22 and further conferred with me on April 24 when I came to Lexington. At that time, I was retained as counsel to represent her uncle on the charges of murder pending against him in this court; that she would have further testified that prior to April 22 she was unable to retain counsel due to her financial situation, but on April 22 became able financially to obtain private counsel. Counsel would further offer as a witness in support of said motion the defendant,
James Sample, who would have testified as set forth in this affidavit affixed to the motion for continuance to the effect that he does not want counsel who has been appointed for him to represent him in this cause, and that there has not been effective communication between him and his present counsel so as to adequately represent him in this cause, in his opinion.
Counsel would also offer his own testimony to the fact that he was ready, willing and able to represent the defendant, James Sample, if granted a continuance in this cause until the next term of court, and that no further continuances would have been requested if granted a continuance until the October, 1974 term of this court.
Counsel would have further offered one of the present counsel for the defendant, James Sample, — more particularly, Calvin King, Esquire, of Durant, Mississippi, and upon information and belief, Mr. King would have testified that he has had a great deal of difficulty in communicating with the defendant herein, James Sample, during his preparation of trial, and as a result has been hampered in his total preparation for trial of this cause.
*804 And based on this testimony and other testimony which would have been given in support of the motion for continuance, Counsel feels that the motion for continuance was well taken.
It is against this factual background that Sample argues the court should have held a hearing on his motion for a continuance. He relies on Watson v. State, 196 So.2d 893 (Miss.1967) where we held that when constitutional rights are involved it is incumbent upon a trial court to have a full blown hearing and a record reflecting same so that on appeal we may determine if a defendant has been denied any of his constitutional rights. In Watson the Court was concerned with the defendant’s complete lack of counsel at trial rather than the question of defendant’s right to have counsel of its own choice to represent him. Unlike Watson, the record is adequate to reflect the facts pertaining to the motion for continuance.
We recognize that the defendant must be given a reasonable opportunity to employ and consult with the attorney of his choosing. Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) and Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954).
Sample was given a reasonable opportunity to employ counsel of his choice and had from October, 1972, until April 24, 1974 to obtain private counsel. The time lapse between his arrest and trial was reasonable. He had discharged counsel previously employed by him and was twice afforded appointed counsel.
In Myers v. State, 296 So.2d 695 (Miss.1974), counsel, retained by third persons to represent defendant, was disqualified by the court and another attorney appointed to represent the defendant. On the date set for trial the attorney who was previously disqualified was reinstated on motion of defendant’s appointed counsel. When the reinstated attorney was informed of the ruling by telephone, he was requested to appear immediately and represent the defendant. The attorney declined and dictated to the court reporter his objection to the proceeding. The trial resulted in the conviction of the defendant and we reversed on the ground that Myers was denied right to counsel of his choice. The defendant in Myers maintained his right to a specified private attorney and did not vacillate in his choice of attorneys as did Sample in the present case.
The statement dictated into the record on the day of trial of the matters which Sample’s retained attorney would prove in support of the application for continuance was insufficient, under the facts of this case, to justify the continuance. The allowance of a continuance is a matter largely within the sound discretion of the trial judge whose judgment will be reversed only when an abuse of discretion appears. Parham v. State, 229 So.2d 582 (Miss.1969). There was no abuse of discretion by the trial court in this case and we hold that the continuance was properly denied.
Sample’s next assignment of error is that the evidence was not sufficient to establish the corpus delicti. On the after-. noon of October 5, 1972, Sample was returning to his home from hunting squirrels when someone shot at him as he walked along Morgan Street. Sample returned the fire and made his way to his house. Shortly thereafter W. M. McNeer, Chief of Police of Lexington, and Amos Hampton, another police officer, proceeded to the scene to investigate the reported shooting. When the officers turned north onto Morgan Street where Sample lived, they observed Sample standing on his porch holding a rifle. They parked their car on the east side of the street in front of Sample’s house and as they were getting out of the car Sample opened fire on them with a rifle and a shotgun wounding both officers. They returned his fire with their hand guns and took refuge behind a house across the street.
Meanwhile, in response to a call, Billy Ellison arrived at the scene in his ambu *805 lance. He observed Officer Hampton standing in the doorway of a house on the west side of the street and parked his car behind the police car but on the west side of the street. Ellison was followed by a car driven by Pettus in which Ronnie Dickard, deceased, was a passenger. Pet-tus parked a short distance behind the ambulance on the west side of the street. Ellison heard several shots while getting out of his ambulance but could not determine the direction from which they came. He took cover behind his vehicle. Meanwhile Pettus and Dickard had gotten out of their car and were walking toward the ambulance when Pettus heard a shot. He and Dickard returned to their car and as Dick-ard was getting in on the right front side of the car, the side facing Sample’s home, he was hit by a gunshot. Fatally wounded, he fell into the front seat of the car. Pet-tus took refuge behind the car until rescued by the sheriff.
Shortly after Dickard was shot, Sheriff Calvin Moore arrived with his Deputy, Howard Huggins. He tried to coax Sample into surrendering and upon receiving no response, fired tear gas into the house. Moore used a protective shield to reach the Pettus car and removed it to safety. A shotgun, some shotgun shells and rifle cartridges which had been fired were recovered in the search of Sample’s house and yard. Bloodhounds led the sheriff to Sample who was seated beside a tree with a rifle in his hand. Sample was arrested without incident.
The pathologist who performed an autopsy on Dickard stated that Dickard died as a result of a bullet which entered the right side of his chest behind the arm pit. He placed Dickard’s time of death at about five minutes after he was hit.
A British Enfield 303 rifle was taken from Sample when he was arrested and Donald Ates, a Criminalist at the Jackson Police Department and Mississippi Highway Patrol Laboratory, testified that the bullet removed from Dickard’s body was fired from a gun having the same identical physical characteristics as Sample’s rifle as far as its make. He could not say that the bullet was fired from the particular rifle because of damage to the bullet. He stated that all of the empty rifle shells found around Sample’s • home were fired from Sample’s rifle.
The location of the wound in Dickard is consistent with the inference that the shot came from the direction of Sample’s house. No other party involved in the shooting had a British Enfield 303 rifle.
Sample did not testify and the only evidence controverting any of that offered by the State was that the first officers who arrived shot at Sample before Sample returned their fire. Although no witness saw Sample fire the shot that killed Dick-ard, the circumstantial evidence was strong enough for the jury to believe, beyond any reasonable doubt, that Sample fired the shot.
Sample next argues that it was error to grant Instruction No. 7 for the State and that we should notice this instruction under the plain error rule. It is a familiar rule that instructions must be taken as one body, and announce the law, not the law of the State or the defendant, but the law of the case. Holmes v. State, 192 Miss. 54, 4 So.2d 540 (1941) and Williams v. State, 95 Miss. 671, 49 So. 513 (1909).
The instruction was erroneous but the instructions as a whole advised the jury of the true principles applicable to the case made by the facts. It is difficult for us to see how the jury could have returned any other verdict under the evidence. We therefore hold that giving Instruction No. 7 was harmless error.
This case was considered by a conference of the Judges en banc.
Affirmed.
All Justices concur.