536 So.2d 1347 (1988)
Noah WHEELER
v.
STATE of Mississippi.
No. 58,042.
Supreme Court of Mississippi.
December 14, 1988.
*1348 Kennie E. Middleton, Fayette, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
In January of 1985, Noah Wheeler was indicted in Forrest County for the crime of aggravated assault upon Steve Reid, a law enforcement officer. Venue was changed to Lauderdale County on Wheeler's motion. On June 27, 1986, the jury found Wheeler guilty as charged, and he was sentenced to thirty years imprisonment in the Mississippi Department of Corrections. From that conviction Wheeler appeals, assigning as error the following:
(1) The trial court committed reversible error in failing to grant defendant's motion to suppress all oral and written statements of the defendant.
(2) The trial court committed reversible error in failing to grant the motions of defendant for mistrial for the following reasons:
A. Denying his right to a trial by an impartial jury, due process and equal protection as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution by the prosecutor's use of peremptory challenges to remove members of the black race from the panel of prospective jurors;
B. Permitting the attorneys for the State to repeatedly refer to another crime, i.e., the shooting and murder of Jackie Sherrill, throughout the trial over the objections of the defendant; and
C. Failing to declare a mistrial when it was obvious that the jury was allegedly deadlocked.
(3) The trial court committed reversible error in denying defendant's motion for mental examination of the defendant.
(4) The trial court committed reversible error in failing to grant defendant's motion to discharge his attorney and to obtain other counsel.
(5) The trial court committed reversible error in failing to grant defendant's motion for a directed verdict and for a peremptory *1349 instruction. Additionally, the verdict of the jury is contrary to the law and against the overwhelming weight of the evidence.

I.
On December 31, 1984, four police officers, Jackie Sherrill, John Barnes, Steve Reid and Tony Davis, went to Noah Wheeler's home in Hattiesburg, Mississippi, at the request of Catherine Crowson of the Welfare Department. These officers and Mrs. Crowson had obtained a warrant for the arrest of Noah Wheeler on a complaint involving children in Wheeler's home. After the officers reached the home, a struggle ensued between three of the officers and Wheeler. A gun belonging to one of the officers went off, and Sergeant Jackie Sherrill was shot and killed[1] and Officer Steve Reid was wounded by a gunshot.
The testimony of the three officers at the scene (Reid, Davis and Barnes) was that Wheeler bolted out of the door, and a struggle ensued between the three officers and Wheeler. Wheeler managed to take Reid's pistol from his holster before Reid was aware of it, and fired three shots before they were able to subdue him.
Wheeler testified that the gun discharged while it was being held by one of the officers. The gun which was fired was the officer's as Wheeler at no time had a gun in his possession.
After the rendition of the verdict by the jury, the court sentenced Wheeler to a term of thirty (30) years in the Mississippi Department of Corrections to run consecutively with any other of Wheeler's sentences.

II.

DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS ALL ORAL AND WRITTEN STATEMENTS OF WHEELER?
Prior to trial, defense counsel filed a motion to suppress as evidence any and all incriminating confessions, admissions or statements alleged to have been made by Wheeler on the grounds that any and all such statements were obtained from him illegally, involuntarily and in violation of his constitutional rights.
This motion to suppress was consolidated with the charge of capital murder against this same defendant, (Wheeler v. State, 536 So.2d 1341 (Miss. 1988)), and was overruled ruled by the trial court. This Court takes judicial knowledge of that hearing contained within another record before this Court and notes that the opinion in Wheeler v. State, supra, affirms the conviction based upon admissions of those confessions.
There were two verbal statements and one written confession in question. The two verbal statements in question were made by Wheeler en route to the hospital and references were made to these statements by various witnesses during the trial. A typical statement was: "He (Wheeler) asked Officer Miller and I was the lady dead? Said he knew he had popped her twice." During the struggle between the officers and the defendant, Wheeler was physically assaulted to bring him under control and remove the gun from him. He alleged that because of this encounter his eyes were closed from swelling and that he was unable to see what he signed. An investigator secured Wheeler's signature to a waiver of rights form and proceeded to secure a confession.
The trial judge heard the suppression evidence and overruled the motion to suppress.[2]
This finding of the trial judge is in accord with the decisions of this Court. Chisolm v. State, 529 So.2d 630 (Miss. 1988); Hemmingway v. State, 483 So.2d 1335 (Miss. 1986); Neal v. State, 451 So.2d 743 (Miss. 1984). This Court reaffirms the holding of *1350 the trial court that the statements and confession were admissible.

III.

DID THE TRIAL COURT ERR BY FAILING TO GRANT WHEELER'S MOTIONS FOR MISTRIAL?
The defendant enumerates several grounds allegedly warranting the granting of any one of his several motions for mistrial, which are: (A) the State's use of peremptory challenges to exclude blacks from the jury; (B) the references to the shooting death of Officer Jackie Sherrill, which occurred at the same time as the aggravated assault; and (C) the trial court's response to the jury's question. The Court addresses each.

*1351 A.

DID THE TRIAL COURT ERR IN DENYING THE BATSON MOTION?
The defense argues that the alleged use of its peremptory challenges to exclude black persons on the jury requires reversal of this case.
Wheeler relies on the now-familiar decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83.
It was stipulated that seventeen members of the panel were members of the black race. Of these seventeen, the court struck three for cause. The State used four of its peremptory challenges to strike blacks, and two of its peremptory challenges to strike whites. The defense used all six of its challenges to strike whites. Of the twelve jurors finally seated, three were black and nine were white.
As stated in Taylor v. State, 524 So.2d 565 (Miss. 1988).
Under Batson, a criminal defendant makes out a prima facie case for attacking the composition of a jury panel if he can show (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen in that group; and (3) that the attendant circumstances justify an inference that the challenges were made for racially invidious purposes. See Batson v. Kentucky, 476 U.S. at 95, 106 S.Ct. at 1722, 90 L.Ed.2d at 87. The burden then shifts to the prosecution to give racially neutral explanations for each challenge. Id. 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
In the present case, the State's use of its peremptory challenges to strike blacks "was suspicious enough to warrant some inquiry, and the trial judge did well to conduct a hearing." Taylor at 566.
The State gave the following reasons for each strike:
The State struck No. 3, Marion McDonald, "who indicated she had to go on active duty service, she is also a teacher and so we just used that peremptory challenge because we didn't feel, if she were going on active duty Friday, she would be with us"; see, R. 118, 159.
The State struck No. 9, Jimmy Lewis because "every time Mr. Middleton would speak, he was sitting on the front row nodding affirmatively to all the questions on voir dire, the few that he did have, and he was very attentive to Mr. Middleton so we just struck him on that basis. It was a gut reaction... . And [he] was unresponsive to the voir dire of the State";
The State struck No. 10, Betty Molphus, because "[a]gain we looked at her background, she has no husband, two children and we did not feel that she would be a conservative juror on behalf of the State so we struck her".
The State struck No. 22, Louise Johnson, who "was not receptive to the State during voir dire and indicated absolutely no responses. In fact, it was difficult to maintain eye contact with her, I never did succeed in doing so".
These reasons are similar to the explanations found to be race-neutral in Lockett v. State, 517 So.2d 1346 (Miss. 1987). It should be reiterated that "the prosecutor's explanation need not rise to the level of justifying exercise of a challenge for cause," but may not include the prosecutor's "assumption  or intuitive judgment  that they [black jurors] would be partial to the defendant because of their share[d] race." Lockett at 1352 (quoting Batson, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88). It is the duty of the trial court to determine whether purposeful discrimination has been shown. Lockett at 1349. In the present case, the explanations given by the State satisfied the trial court. Because "a trial judge's factual findings relative to *1352 a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference [such findings] will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence." Lockett at 1350.
This Court holds that there is no Batson violation in these explanations and affirms the trial court on this assignment.

B.

DID THE TRIAL COURT ERR IN PERMITTING REFERENCES TO THE SHOOTING AND DEATH OF OFFICER JACKIE SHERRILL?
At trial, the defense counsel made a motion in limine that no mention be made of the fact that a bullet was fired which struck and/or killed Officer Jackie Sherrill on the grounds that such a statement would be prejudicial to Wheeler. The trial court overruled this motion with the exception of advising the district attorney that this was not a retrial of the capital murder. The court's ruling was correct in this matter.
Proof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences. Such proof of another crime is also admissible where it is necessary to identify the defendant, where it is material to prove motive, and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.
Neal v. State, 451 So.2d 743, 759 (Miss. 1984). See, e.g., Johnson v. State, 416 So.2d 383 (Miss. 1982); Mason v. State, 429 So.2d 569, 572-73 (Miss. 1983); Woods v. State, 393 So.2d 1319, 1325 (Miss. 1981).
As in Neal, evidence of Wheeler's crime against Officer Jackie Sherrill was admissible because it was integrally related in time, place and fact with the aggravated assault of Officer Steve Reid. The two offenses arose out of a common nucleus of operative facts. "We are concerned here with the State's legitimate interest in telling a rational and coherent story of what happened ..." to Officer Steve Reid. Neal at 759. What happened to Officer Jackie Sherrill is "integrally intertwined" with what happened to Officer Steve Reid.
In addition, careful study of the record makes it clear that the trial judge and prosecuting attorney refrained from mentioning other crimes except when it was reasonably necessary to the State's legitimate effort to establish the aggravated assault of Officer Steve Reid. This assignment of error, therefore, is without merit.
In addition, Rule 404(b), Mississippi Rules of Evidence, provides that evidence of other crimes may be admissible for purposes other than to prove the character of a person in order to show that he acted in conformity therewith. The Comment notes that evidence of another crime "is admissible when the offense in the instant case and in the past offense are so inter-connected as to be considered part of the same transaction." The shooting of Sergeant Sherrill and the shooting of Officer Steve Reid were so intimately interconnected that it would have been impossible for the State to have related to the jury the "complete story of the crime," without referring to the shooting of Sergeant Sherrill. Brown v. State, 483 So.2d 328, 330 (Miss. 1986). The jury also was entitled to know why Sergeant Sherrill was not present in court to testify.
Rule 404(b) also provides that evidence of another crime may be admitted to prove "absence of mistake or accident," and such proof was crucial to the State's case here, since accident or mistake was the very defense offered by Wheeler. As required by Rule 403, the probative value of this evidence outweighed its potential for prejudice.

C.

DID THE TRIAL COURT ERR IN ITS RESPONSE TO THE JURY'S REQUEST *1353 FOR FURTHER INSTRUCTIONS?
During the deliberations, the jurors sent a note to the court stating, "one person cannot agree so, what now?" The jury had only been deliberating approximately three and one-half hours at this time. The court responded by instructing the jury in the following manner:
Ladies and gentlemen of the jury, we have received your communication by way of a note. We are aware of that situation, I have communicated that to the state's attorney, to the defense attorney and to the defendant. In light of the fact that you have not been deliberating that terribly long today, we are going to allow you to return to the jury room and continue your deliberations. Take as long as you need.
Thank you, you may retire to the jury room. When all twelve of you have arrived at a verdict, if you will knock we will be here whenever to receive that verdict.
The defense counsel requested a mistrial due to the belief that this response by the court "effectively made it clear to the jury that they were going to be there until they arrived at a verdict and that they were not to knock on the door until they reached a verdict."
The jurors apparently understood the court's comments differently from the way defense counsel understood them because the jurors thereafter did knock on the door with questions before reaching a verdict. At that time the judge gave the following Sharplin instruction to them:
Ladies and Gentlemen of the jury, as I have told you once you have retired to begin your deliberations, there are very limited questions that I can answer and that being the case I will not attempt to answer the questions, I will however read to you that which I am allowed to do at this time: "I know that it is possible for honest men and women to have honest different opinions about the case but if it is possible to reconcile your differences of opinion and decide this case then you should do so. According, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in a view of reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide this case for yourself but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning your verdict."
At this time, please continue your deliberations.
Sharplin v. State, 330 So.2d 591, 596 (Miss. 1976).
The giving of the Sharplin charge eliminated the possibility that the court coerced a verdict from the jury through its instructions. The refusal to grant a mistrial, therefore, was not error.

IV.

DID THE TRIAL COURT ERR IN DENYING DEFENSE COUNSEL'S MOTION FOR FURTHER PSYCHIATRIC EXAMINATION?
Prior to trial, the defense filed a motion for psychiatric examination, and the court ordered such an examination. The defense later filed a motion for further psychiatric examination.
At the pretrial hearing on motions, defense counsel advised the court he was having difficulty communicating with Wheeler. The court questioned Wheeler in this regard, and Wheeler told the court, "All I'm saying, Judge, is I want to be tried by a jury and I'm ready to stand trial. That's all I'm saying. Whitfield already said I'm competent of standing trial so I'm ready to stand trial. That's all."
*1354 Later, the court asked defense counsel if he wished to be heard on motion for further psychiatric evaluation, and counsel responded that his duty as an officer of the court required him to say there was not a significant amount of evidence that could be produced at that time. He further requested leave to produce at such time as defense was capable of producing further evidence concerning the psychiatric condition of the defendant.
The purpose of § 99-13-11 Miss. Code Ann. (1972) permitting a judge to order a criminal defendant to submit to a mental examination to determine his ability to make a defense is "to avoid placing an accused on trial unless he is capable of conducting a rational defense by intelligently conferring with his counsel." Caylor v. State, 437 So.2d 444, 445 (Miss. 1983); see also Tarrants v. State, 236 So.2d 360 (Miss. 1970); Frierson v. State, 165 So.2d 342 (Miss. 1964).
A month prior to trial, upon motion of defense for mental evaluation, Wheeler was sent to Mississippi State Hospital, where it was determined he was competent to stand trial. Denial of the request for further mental examination to determine competency to stand trial, after a mental examination had resulted in the determination that Wheeler was competent to stand trial, is not error. Hill v. State, 432 So.2d 427 (Miss. 1983); Greenlee v. State, 437 So.2d 1010 (Miss. 1983). In addition, since the motion for further psychiatric examination was unsupported by proof, the trial court fulfilled its duty and "did not abuse its discretion in denying [the] motion for further psychiatric evaluation after hearing on such motion wherein no proof was offered." Parcell v. State, 389 So.2d 1386 (Miss. 1980).

V.

DID THE TRIAL COURT ERR IN DENYING THE MOTION FOR LEAVE TO OBTAIN NEW COUNSEL?
On the day trial began, Wheeler made a motion for new counsel. This motion was untimely made and, therefore, not worthy of favorable consideration. Collins v. State, 369 So.2d 500 (Miss. 1979); McClendon v. State, 335 So.2d 887 (Miss. 1976). The trial court did not abuse its discretion in overruling this motion.
In addition, a "criminal defendant is not entitled to expert counsel, or to counsel of his own choosing, but only to reasonably effective assistance of counsel." Johnson v. State, 476 So.2d 1195, 1204 (Miss. 1985); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Counsel is presumed to be competent. If counsel is reasonably effective in the defense of an accused, he meets constitutional standards, irrespective of the client's evaluation of his performance.
Johnson at 1204.
The trial judge noted that counsel had represented Wheeler in a prior capital murder trial and had done "a very fine, very professional expert job" in that trial. As such, counsel met the constitutional requirements.

VI.

DID THE TRIAL COURT MEET THE STANDARD FOR WEIGHING THE SUFFICIENCY OF THE EVIDENCE?
In three of Wheeler's assignments of error he raises the issues of: (1) whether the trial court should have granted a directed verdict in favor of Wheeler; (2) whether the trial court should have granted a peremptory instruction; and (3) the sufficiency of the evidence.
Although Wheeler "complains of the overruling of his motion for a directed verdict, he waived any error thereof by adducing evidence in his own behalf." Robinson v. State, 418 So.2d 749, 750 (Miss. 1982).
At the conclusion of the State's case, Wheeler moved for a directed verdict of acquittal of aggravated assault upon a law enforcement officer, and assigns as error the action of the trial judge in overruling his motion. After the motion was overruled, Wheeler presented evidence in an attempt to establish a defense and "is thereby precluded from raising any issue *1355 on appeal with regard to the denial of his motion for a directed verdict." Robinson at 751 (quoting Tubbs v. State, 402 So.2d 830 (Miss. 1981). See also Lucas v. State, 381 So.2d 140 (Miss. 1980); Watts v. State, 317 So.2d 715 (Miss. 1975).
Wheeler also assigns as error the trial court's denial of his motion for the peremptory instruction, which reinstructed the jury to find the defendant not guilty. The rule pertaining to peremptory instructions and directed verdicts in criminal cases was again stated in Hammond v. State, 465 So.2d 1031 (Miss. 1985).
The rule for considering motions for directed verdicts and requests for peremptory instructions in criminal cases is stated in Warn v. State, 349 So.2d 1055 (Miss. 1977):
Peremptory instructions should be refused if there is enough evidence to support a verdict....
The law regarding peremptory instructions in Mississippi is stated in Cochran v. State, 278 So.2d 451, 453 (Miss. 1973):
The rule in regard to a peremptory instruction is the same in criminal and civil cases, the rule being that when all the evidence on behalf of the state is taken as true, together with all sound or reasonable inferences that may be drawn therefrom if there is enough to support a verdict of conviction, the peremptory instruction must be denied.
See also Jackson v. State, 440 So.2d 307 (Miss. 1983); Gray v. State, 387 So.2d 101 (Miss. 1980); Rich v. State, 322 So.2d 468 (Miss. 1975); McGee v. Coccaro, 261 So.2d 465 (Miss. 1972); and Carroll v. State, 196 So.2d 878 (Miss. 1967).
In considering the sufficiency of the evidence, "this Court must accept as true the evidence which supports the verdict." Spikes v. State, 302 So.2d 250, 251 (Miss. 1974); Murphree v. State, 228 So.2d 599 (Miss. 1969).
The testimony of the officers who were present at the scene was that Wheeler bolted out of the door into Officer Reid, took Reid's pistol from his holster before Reid was aware of it, and fired three rounds at the officers before they were able to subdue him. Wheeler testified that while a struggle did ensue the gun discharged while it was held by one of the officers.
It is "the jury's prerogative to accept the testimony it deemed to be more trustworthy and reject that it deemed was not." Robinson v. State, 418 So.2d 749, 751 (Miss. 1982); Newton v. State, 90 So.2d 375 (Miss. 1956). The jury believed the testimony of the police officers as was their right. The evidence, when viewed in the light most favorable to the State supports the jury's verdict. Norman v. State, 385 So.2d 1298, 1300-01 (Miss. 1980). See Gathright v. State, 380 So.2d 1276 (1980); Murphree v. State, 228 So.2d 599 (Miss. 1969).
This assignment of error is without merit.
In the case at bar, there was no reversible error in the trial below. The conviction and sentence of thirty (30) years in the Mississippi Department of Corrections is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Wheeler was convicted of the capital murder of Sergeant Sherrill. This case is currently before the Mississippi Supreme Court on appeal.
[2] The Court's finding is as follows:

This Court finds beyond a reasonable doubt that this defendant, Noah Wheeler, was capable of understanding his Miranda Rights and that after having these rights explained to him, that he made an intelligent, knowingly and voluntary waiver of those rights. And having done so that this defendant made a voluntary statement. This Court further finds beyond a reasonable doubt that no threats were made at the time of the statement or in order to induce such a statement. This Court finds beyond a reasonable doubt that no force was used at the time of the statement or to induce the statement as previously indicated in this Court's decision and this Court also finds beyond a reasonable doubt that there was no coercion or promise of reward in order to induce this statement. This Court obviously acknowledges the existence of marks and abrasions on the face of the defendant which are exhibited in the photographs which have been introduced in this part of the suppression hearing. This Court is of the opinion that these are not as severe as this defendant has alleged and obviously then, this Court concludes that this happened at the point of arrest. It is also noted that for these injuries treatment was administered to this defendant apparently even without his cooperation, and despite his apparent unwillingness to have treatment that this treatment was rendered to him and this having been based upon the testimony of Carolyn Parker. This Court further finds beyond a reasonable doubt that Deputy Sheriff Bill Mills was not present at the time of the statement and that he at no time abused this defendant prior to the statement. The Court further finds beyond a reasonable doubt that the statement is given to Investigator Arlon Moulds and Deputy Sheriff Herbert Hart which was thereafter typed was in fact the statement made by this defendant at that time and acknowledged by him to be a true statement. Additionally this Court further finds beyond a reasonable doubt that Mrs. Wallace who was present for the acknowledgement of the statement was an independent observer. That she talked repeatedly with this defendant about his rights in preserving the same. She talked further with this defendant Noah Wheeler as to whether or not he had been abused and whether or not his statement was freely given to law enforcement officers and that apparently she did this in order to satisfy herself before she acknowledged the defendant's statement. Despite the warnings of Mrs. Wallace as an independent observer to this defendant Noah Wheeler, which advice was that he should have an attorney present, he declined to do so and even at one point apparently expanded on his initial statement and this was subsequently typed on the statement by Mrs. Wallace. The statements and the rights of this defendant were read to the defendant Noah Wheeler. He was given an opportunity to read the statement. He signed it as well as the Waiver of Rights again and this was acknowledged by him once again to be true. This was done of his own free will and volition. Therefore, the statement given by this defendant to Investigator Moulds, Deputy Sheriff Hart and independent observer, Mrs. Wallace, was done after repeated Miranda Warnings had been given and after a Waiver of Rights had been executed by the defendant and acknowledged by him to be the truth. And these statements are preserved by this Court and received by this Court to be free and voluntary and that being the case this Court does hereby rule that those statements would be admissible into evidence if offered by the State of Mississippi and that being the case this Court does hereby overrule the Motion of the Defendant to suppress those statements. Now having made that pronouncement this Court perceives that it should additionally go further to the other statements which were not of a written nature but of a verbal nature and those would be the statements made to Deputy Sheriff L.W. Warden and to Deputy Sheriff Robert Miller. In making this consideration obviously this Court must first consider if the Miranda Warnings were applicable in this particular matter. In regards thereto, this Court finds beyond a reasonable doubt that the statements 1) were not given pursuant to any custodial interrogation and 2) that this was not questioning which had been instituted by any law enforcement officer. That being the case, this Court finds beyond a reasonable doubt that these statements were made to the officers and they were made by this defendant Noah Wheeler at his own volition and that obviously they were spontaneous statements and as such the Miranda Warnings would not apply to these statements. The Court further finds beyond a reasonable doubt that neither of these officers, the same being Deputy Sheriff Warden and Deputy Sheriff Miller bused this defendant, threatened this defendant or coerced this defendant in order to obtain any of these statements. That being the case, and that being the ruling of this Court, at this time this Court would overrule any motions of the defendant to suppress these statements since they were spontaneous statements and therefore in conformity with that ruling this Court does hereby rule that if attempted to do so that this Court will allow the State of Mississippi to have those statements introduced into evidence before this jury.