756 So.2d 826 (2000)
Nolan AINSWORTH, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00601-COA.
Court of Appeals of Mississippi.
February 1, 2000.
Travis Buckley, Ellisville, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. Appellant Nolan Ainsworth was indicted by a Jasper County grand jury for murder. Following a trial, the jury found Ainsworth guilty of manslaughter. The circuit court sentenced Ainsworth to ten years in the custody of the Mississippi Department of Corrections, with five years suspended. Ainsworth presents the following three issues on appeal:
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO GRANT A PEREMPTORY INSTRUCTION AFTER BOTH THE STATE AND DEFENDANT HAD RESTED.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE STATE TO ARGUE TO THE JURY, OVER OBJECTION OF THE DEFENDANT, THAT DESPITE THE FACT THAT THE STATE HAD THE BURDEN OF PROOF BEYOND A REASONABLE DOUBT THAT DID NOT MEAN THAT THE STATE HAD TO PROVE GUILT BEYOND ALL DOUBT.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE STATE TO SHOW MISCONDUCT OF THE DEFENDANT AND HIS WITNESSES NOT RELATED TO THE SLAYING.
¶ 2. Finding merit in the appellant's third assignment of error, this Court reverses and remands.

*827 STATEMENT OF THE FACTS
¶ 3. Appellant Nolan Ainsworth ("Ainsworth") and his mother, Judi Ainsworth, both testified as to the thirteen year relationship they had with the victim, Jerry Strickland, that lasted up until Strickland's death on August 28, 1996. Their testimonies were almost identical. Ainsworth lived with his mother in Moss, Mississippi, and Strickland had lived with Ms. Ainsworth on and off for thirteen years. Strickland physically and mentally abused both Ainsworth and his mother. Strickland had beaten both of them, threatened them with knives, and even threatened to kill them at one point. Ms. Ainsworth testified that she had been asking Strickland to leave the home for weeks, but to no avail. On various prior occasions, she had Strickland arrested for trespass, harassment, and assault, as well as informing the police that she and her son feared for their lives. Both testified that Strickland was a heavy drinker and smoked marijuana regularly. Ms. Ainsworth stated that her fear for her life was the reason for her lack of calls to the police, and why she allowed Strickland back into the home time and again. Ainsworth also testified that he honestly feared for his life, and that he truly believed Strickland would try to kill him.
¶ 4. On the morning of August 28, the day in question, Ms. Ainsworth and her son went to Jackson, Mississippi for a doctor's appointment concerning Ainsworth's hand. Ainsworth had cut an artery and the nerves in his right hand, his predominant hand, with a knife while camping three weeks prior. He had surgery in attempt to repair the damage, but Ainsworth testified that his right hand was almost completely useless. On August 28, his right arm and injured hand were in a brace and movement of his fingers was very slight.
¶ 5. Ms. Ainsworth testified that since they could not afford the prescribed medication for her son, on the drive home, they stopped and purchased some beer. When they arrived home, Strickland was not present, but he arrived a few hours later. Ms. Ainsworth testified that at this point she began telling Strickland that he could not stay there anymore, and he needed to leave her house. Strickland then hit her and threw her against the door. She stated that she then saw Ainsworth coming out of his bedroom with a gun, and that she frantically ran outside. She then heard the gunshot. She did not see Strickland or the gun after the shooting. Ms. Ainsworth and her son went to Thomas Johnson's house, their neighbor, and called the police.
¶ 6. Ainsworth testified that prior to the day in question, he borrowed a 16-gauge shotgun, on the advice of Officer Terrell, to "get some protection." He also stated that he drank four to five beers on the day in question. Ainsworth testified that, while coming out of his bedroom, he heard Strickland and his mother fighting and saw Strickland hit his mother. He stated that he approached Strickland with a shotgun, but that he was only trying to make Strickland leave. Strickland was pacing back and forth in front of the bathroom and then Strickland jumped at Ainsworth. When Ainsworth jumped back, the gun accidentally went off, shooting Strickland in the head. He continued by testifying that he did not deliberately fire the shotgun, and that the only reason he was pointing the gun at Strickland was because he feared for his life, and he was trying to make Strickland leave. He stated that his fingers, while in the brace, must have accidentally hit the trigger. Ainsworth was arrested and charged with murder.

LAW AND ANALYSIS

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN PERMITTING THE STATE TO SHOW MISCONDUCT OF THE DEFENDANT AND HIS WITNESSES NOT RELATED TO THE SLAYING?
¶ 7. The day after the shooting occurred, the State obtained a urine sample *828 from Ainsworth. After it had been analyzed, the crime lab reported it tested positive for the presence of marijuana. The State introduced this report into evidence. Over Ainsworth's objection, the trial judge admitted the document. Ainsworth contends that the admission of this document constitutes reversible error. We agree with this argument.
¶ 8. Mississippi Rule of Evidence 404(b) states that: "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." M.R.E. 404(b). The Supreme Court of Mississippi has consistently held that the admission of such evidence to prove that the defendant acted in conformity therewith, constitutes reversible error. Ballenger v. State, 667 So.2d 1242, 1256 (Miss. 1995); Duplantis v. State, 644 So.2d 1235, 1246 (Miss.1994); Parker v. State, 606 So.2d 1132, 1136 (Miss.1992); Houston v. State, 531 So.2d 598, 605 (Miss.1988). However, there are exceptions to this rule. Such evidence of other crimes or bad acts may be admissible as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). Such evidence of another crime or act has also been held admissible if it is "so interrelated to the charged crime as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." Wheeler v. State, 536 So.2d 1347, 1352 (Miss.1988) (citing Neal v. State, 451 So.2d 743, 759 (Miss.1984)).
¶ 9. The State contends that the marijuana crime lab report is admissible under this last exception. The State argues that the evidence concerning Ainsworth's activities prior to the shooting is so interrelated to the actual shooting, that the two acts constitute one single transaction; therefore, the marijuana report is admissible evidence. The trial judge appears to have come to the same conclusion as the State by holding that the evidence was admissible as part of the res gestae. Res gestae is defined as the "events at issue, or other events contemporaneous with them." Black's Law Dictionary 544 (1996). Concerning res gestae, the Mississippi Supreme Court has stated the following: "Evidence is admissible as showing the res gestae of a crime, if the evidence tends to show part of the entire transaction constituting the crime." Wade v. State, 583 So.2d 965, 967 (Miss.1991); Collins v. State, 513 So.2d 877, 879 (Miss.1987) (citing Woods v. State, 393 So.2d 1319, 1324 (Miss.1981)). For evidence to be considered as such, it must be found to be "an inseparable part of the entire picture and the main transaction." Woods, 393 So.2d at 1324.
¶ 10. The only legal authority the State offers to support its argument is Brown v. State, 690 So.2d 276, 286 (Miss.1996). The State argues that in Brown, the Supreme Court of Mississippi held that evidence of the defendant's drug use on the night of, and prior to, the murders came within the exception allowing admission where the two crimes were so interrelated so as to constitute one transaction. Id. Contrary to the State's interpretation, the supreme court appears to have actually taken a different route in its analysis. The Brown court performed an initial examination called the "acid test" to determine whether the evidence was relevant. This test is "whether the evidence is relevant to the purposes for which it is sought to be introduced." Id. (citing Cotton v. State, 675 So.2d 308, 314-15 (Miss.1996)) (quoting Caldwell v. State, 443 So.2d 806 (Miss. 1983)) (emphasis added). In Brown, the evidence concerning the defendant's drug use on the night of the murders consisted of statements that also included information regarding the defendant's whereabouts and describing what he was doing on the night of the murders. Although the evidence contained information concerning another crime besides the one charged, the evidence was admissible because: "The State sought to introduce the statements to show the discrepancies which arose during *829 Brown's interrogation, not to show his character or that he was acting in conformity therewith. It was relevant, therefore, to the veracity of Brown's statement to authorities that he had not been near the Boyd house that night." Brown, 690 So.2d at 286 (emphasis added). The court decided that the evidence in Brown was admissible based on the fact that it was relevant for the purpose of proving the discrepancies in Brown's statements. The evidence was not used to prove Brown's character and that he acted in conformity therewith. Therefore, there was no actual question of whether or not the evidence was admissible under one of the exceptions to M.R.E. 404(b).
¶ 11. For this reason, Brown and the present case are distinguishable. Both cases dealt with evidence that elicited proof that the defendants had committed another crime or bad act: the use, or possible use, of marijuana. In both instances, the trial judge did not suppress the evidence, and in both cases the defendants argued that this admission violated M.R.E. 404(b), constituting reversible error. In Brown, as stated earlier, the "other crime" evidence was introduced to discover whether or not Brown was telling the truth as to his whereabouts in relation to the victims' house on the night of the murders. The evidence was used to attack Brown's veracity; therefore, there was no real M.R.E. 404(b) issue. However, in the present case the evidence revealing possible marijuana use by Ainsworth was not offered for this reason; therefore, Brown is not dispositive of the present case. The document in our case could only have been introduced for the purpose of showing that Ainsworth was a bad actor with the tendency to commit crimes. Since the evidence was not used to attack Ainsworth's veracity, we must conclude that the State offered it to "prove the character of a person in order to show that he acted in conformity therewith," a motivation which is forbidden by M.R.E. 404(b).
¶ 12. This Court agrees with Ainsworth's argument that there is a M.R.E. 404(b) problem, so we must look at whether or not the marijuana evidence is admissible, as argued by the State, under the "single transaction" exception. Under this exception, before this evidence of Ainsworth's other crime can be found admissible, this Court must find that "the main transaction cannot be brought out without showing such other offenses." Anderson v. State, 171 Miss. 41, 156 So. 645, 646 (1934). In Anderson, the defendant shot three men. The "main transaction" was the shooting of one of the men, Ewing. The defendant, Anderson, objected when the judge admitted the evidence of the shooting of the other two men. The Supreme Court of Mississippi held this to be a factual situation where the exception is applicable. The court stated the shooting of Ewing could not be "shown intelligently" without showing the facts in connection to the shooting of the other two men because the shooting of all three was a situation that could not be separated. Id. The court in Wheeler v. State, 536 So.2d 1347, 1352 (Miss.1988) dealt with this exception as well. In Wheeler the court stated that the two offenses "arose out of a common nucleus of operative facts."
¶ 13. In the present case, unlike Anderson, the evidence of Ainsworth's drug use was generated from a drug test taken one day after his arrest. There was no showing as to when Ainsworth consumed the marijuana, or how the marijuana use could have been part of a single transaction. The charged offense of murder in the present case can be explained and demonstrated to the jury without showing evidence of prior drug use by Ainsworth. The two situations are not inseparable, and they did not arise out of a common nucleus of operative facts. Ainsworth's crime lab report that tested positive for the presence of marijuana and the charged crime of murder are not so interrelated so as to constitute one single transaction or occurrence. The admission of this evidence constitutes reversible error. *830 Accordingly, this Court reverses and remands for a new trial.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF JASPER COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JASPER COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.