BRIDGES, P.J.,
for the Court.
¶ 1. Terrell Washington was convicted of carjacking in the Circuit Court of DeSoto County. He appeals asserting two errors:
I. THAT THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO USE EVIDENCE OF OTHER CRIMES AND NO PROPER BALANCING TEST WAS UTILIZED.
II. THAT THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR A DIRECTED VERDICT AND THE MOTION FOR JNOV OR NEW TRIAL.
Finding no error, we affirm.
FACTS
¶ 2. On March 16, 2004, when Moneshia Hughes left school at the end of the day, her friend who usually drove her home was not waiting for her in the parking lot. Recognizing Akeem Freeman, she asked him for a ride, and he agreed to take her home while on his way to work. Freeman’s car was a blue Oldsmobile Cutlass. When they arrived at Hughes’ home, she asked him to stop and wait until she was went inside and made sure there was no one in the house. He agreed, and got out of his car to wait. After Hughes checked her house, she returned outside to tell Freeman she was safe and he could leave. She noticed a gray car “circling” the neighborhood. She and Freeman had seen this car earlier when Freeman was driving her home, but they had assumed it was someone from the neighborhood. The grey car approached, and stopped by Freeman’s Cutlass. Two men jumped out, one armed with a shotgun, and ordered them to get on the ground. The men took Freeman’s wallet, as well as Hughes’ coat and her cell phone from her backpack. The men forced Freeman to give him his car keys. Freeman’s Cutlass, however, was difficult to “crank,” and the men were unable to start the vehicle by themselves, so they ordered Freeman to get up and start the car for them. The two men then drove off in Freeman’s car.
¶ 3. Hughes memorized the license plate of the first car, and called 911 to report the theft. Both Hughes and Freeman testified that the first car stayed at the scene until after the two men drove away in Freeman’s car, and the first car followed Freeman’s car as it left the scene. However, neither Hughes nor Freeman identified any of the perpetrators, and Freeman specifically said he could not see who was in the first vehicle.
¶ 4. Danny Vasser, an Olive Branch police officer, testified that he received a “be on the lookout” report for an older model, blue Oldsmobile Cutlass, and encountered a car fitting that description. He attempted to stop the vehicle, but it accelerated away, and he pursued. Eventually, the Cutlass stopped, and two men “bailed out.” Vasser chased and captured both men, Julius Howard and Mario Brown. Vasser testified that when he first encountered the Cutlass, it was not being followed by another car.
¶ 5. James Howell, a Memphis, Tennessee police officer, testified that he had taken a statement from Washington concerning the theft of a vehicle in Memphis on the day of the carjacking. In this statement, Washington admitted to stealing a grey Buick Century in Memphis, but he denied any role in the carjacking. He said he was accompanied by Julius Howard, Mario Brown and Solomon Fleming. He said they were in the process of returning his aunt’s Maxima to her, and they *998 needed the a car in which to ride, so they stole the Buick. He said the men obtained a shotgun from a person whom he could only identify by an alias. He said that he drove the Buick to Olive Branch, in the company of the three other men, with no plan to commit a carjacking or any other crime. But, Howard saw a Cutlass that had “some nice rims,” and told him to pull over. Howard and Brown got out of the Buick with the shotgun. Washington said he then drove away, and the “next thing” he knew, Howard and Brown were following him in the Cutlass.
¶ 6. Brown had been convicted of carjacking in a trial held prior to Washington’s trial. Brown testified for the defense, and his testimony agreed with Washington’s that there had not been any plan to commit the carjacking. His testimony differed from Washington’s only in that he said that he told Washington to stop the car, while Washington said Howard told him to stop.
I. THAT THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO USE EVIDENCE OF OTHER CRIMES AND NO PROPER BALANCING TEST WAS UTILIZED.
¶ 7. Washington contends that the circuit court erred in allowing the State to introduce his statement given to the Memphis police because there was “no proof of plan or other exception available” that would allow evidence of other crimes to be admitted. Washington also contends that the circuit court failed to utilize the balancing test of prejudice versus probative value of prior bad acts required by MRE 403. Evidence of a prior crime is admissible if the prior crime is necessary to tell “the complete story so as not to confuse the jury.” Ballenger v. State, 667 So.2d 1242, 1257 (Miss.1995). Evidence of a prior crime is also admissible if the prior crime was so interrelated with the crime charged that the two crimes constitute a “single transaction or occurrence or a closely related series of transactions or occurrences.” Wheeler v. State, 536 So.2d 1347, 1352 (Miss.1988). Evidence of the prior crime is also admissible to prove “scienter.” Id. In this case, the record shows that the circuit court found:
[h]e’s [Washington’s] admitted to the crime in Memphis which gives him possession of the car. That would seem to prove that he was there if there’s going to be a general denial.... I think it would be admissible under 404(b) even after going back and — more probative than prejudicial. Obviously it’s prejudicial, but if there’s going to be a general denial as the defense, it would be more probative of the fact of his involvement I think than it would be prejudicial.
The determination of whether Washington participated in the carjacking, or whether the carjacking was merely the spontaneous actions of Howard and Brown, was a factual question for the jury. The testimony of Hughes and Freeman could lead to an inference that Washington waited until the carjacking was completed before leaving the scene, and in so doing participated in the crime by providing Howard and Brown with an avenue of escape if the crime went awry. However, the testimony of Vasser, that when he encountered the stolen Cutlass it was not accompanied by the stolen Buick driven by Washington, could support an inference that there was no common plan involved with the carjacking. This difference in testimony led to the critical factual determination in this case. The facts that Washington was in the company of Howard and Brown when he admittedly stole a vehicle and secured a shotgun in Memphis, and then traveled with them to Mississippi where the carjacking occurred, were relevant for the jury’s determination. Therefore, the circuit court *999 did not err in ruling that Washington’s statement to the Memphis police was admissible. Additionally, the record shows that the circuit court did conduct the balancing test of prejudice versus probative value. There is no merit to this assignment of error.
II. THAT THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR A DIRECTED VERDICT AND THE MOTION FOR JNOV OR NEW TRIAL.
¶ 8. Washington contends that the circuit court erred in overruling his motion for a new trial or in the alternative a JNOV. A motion for new trial deals with the weight of the evidence, and our standard of review regarding a motion for new trial is stated in McClain v. State, 625 So.2d 774 (Miss.1993):
Matters regarding the weight and credibility of the evidence are to be resolved by the jury ....
Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court’s sound discretion. Procedurally such challenge necessarily invokes [Uniform Circuit and County Court Rule 10.05]. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion ....
Id. at 778-81 (citations omitted).
¶ 9. A motion for JNOV deals with sufficiency of the evidence; our standard of review concerning the trial court’s denial of JNOV is also described in McClain:
In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with McClain’s guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence .... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. at 778 (citations omitted).
¶ 10. Fair minded jurors could have accepted Washington’s assertion that there was no common plan to commit the crime, and he was merely an innocent bystander. However, jurors could also have inferred from his actions, of stealing a car, securing a shotgun and driving to Mississippi, that he was an active participant in the carjacking. Therefore, the circuit court did not err in denying the motion for a JNOV. Moreover, given the facts of this case, we cannot say the circuit court abused its discretion in denying the motion for a new trial. There is no merit to this assignment of error.
¶11. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF ARMED CARJACKING AND SENTENCE TO TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1000 IS AFFIRMED. THE SENTENCE IMPOSED HEREIN SHALL RUN CONCURRENT TO THE SENTENCE NOW BEING SERVED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.