492 So.2d 562 (1986)
Jerry Donnell GRAVES
v.
STATE of Mississippi.
No. 56354.
Supreme Court of Mississippi.
July 9, 1986.
M. Charles May, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Harold H. Brittain, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
From a conviction of murder and a sentence of life imprisonment as an habitual offender under Mississippi Code Annotated § 99-19-83 (Supp. 1985), on November 29, 1984, JERRY DONNELL GRAVES (Graves) appeals, assigning as error:
I. The trial court erred in overruling the defendant's motion for mistrial on the grounds that the State unnecessarily introduced evidence of an unconnected crime;
II. The trial court committed reversible error in admitting a green knife as evidence of the murder weapon; and
III. The re-indictment of the appellant was a result of prosecutorial vindictiveness.

*563 I.

SHOULD THE TRIAL COURT HAVE DECLARED A MISTRIAL DUE TO EVIDENCE BEING INTRODUCED OF ANOTHER CRIME COMMITTED BY GRAVES?
Veronica Moore was babysitting for Dorothy Jean Ransburgh, the sister of Jerry Donnell Graves, on the night of December 21, 1979, and during the early morning hours of December 22, 1979. On direct examination she testified for the state that Jerry Graves came to the Ransburgh house around 4:00 or 4:30 a.m. on December 22, 1979, and was wearing at that time a pair of beige pants and a soft beige cap. She testified that Graves was wearing a dark shirt, but she could not remember what color it was. On cross-examination, Moore admitted that she had told the attorney for Graves that she thought Graves was wearing something beige, and that he did not have on anything maroon. The following exchange then took place:
BY MR. MAY:
Q All right. Now who have you talked to since that time concerning what he wore?
A Chief Gusack.
Q You talked to Mr. Gusack?
A Yes.
Q Now what did Mr. Gusack tell you that Jerry Graves was supposed to have been wearing?
A A beige pair of pants, a soft cap and a maroon shirt.
Q Mr. Gusack told you that's what he was wearing, didn't he?
A Yes.
Q O.k., but you told me that it was a jump suit, didn't you?
A Yes.
Q All right.
On redirect examination, Ms. Moore said that in 1979 she talked to the police about what Graves was doing at the Ransburgh home between 4:00 and 4:30 a.m. She further testified that she talked to the police about what Graves was wearing on that night. She made a police report about what happened that night and about what Graves was wearing, and she further testified that Dorothy Jean Ransburgh and her Uncle Lewis Ransburgh were also present. At this point, Graves objected on the grounds that the district attorney was attempting to establish that Jerry Graves allegedly did another crime on the night in question, for which he has never been convicted. That objection was overruled. There was then an objection as to Moore testifying about what Ransburgh said Graves was wearing, on the grounds that it was hearsay. The jury was then instructed by the court to disregard any portion of the answer by Moore that referred to the police report.
Dorothy Ransburgh then testified for the state that when she and her husband returned to their home in the early morning of December 22, 1979, she had an occasion to call the police and the police came to her house. She admitted that she gave to the police a description of her brother and the clothing that he had on, but she testified that she could not now remember what that clothing was.
The district attorney then called Officer Steven Roebuck, who testified that he was on duty on the morning of December 22, 1979, and responded to the call at the Ransburgh home. In response to questioning, Officer Roebuck testified that he took down a description of the clothing that Mrs. Ransburgh told him was being worn on that occasion by Graves. After refreshing his memory from the police report that he took down simultaneously with the description given by Mrs. Ransburgh, he testified that Mrs. Ransburgh said Graves was wearing a maroon shirt or a maroon tee-shirt, some tan or khaki pants, and a tan or khaki flop hat. When asked was there anything else unusual in the report about Graves' appearance, the following answer was given:
A Ms. Ransburgh told me she observed what appeared to be blood 
BY MR. MAY:
(Interposing) Your Honor, we are gonna object to hearsay.

*564 BY THE COURT:
Sustained.
The thrust of this assignment of error is that: (1) The prosecution may not show that a defendant committed crimes other than the one for which he is on trial, except in certain situations, and (2) Roebuck's testimony from the police report as to what Ransburgh told him about what Graves was wearing was hearsay.
The evidence on this record does not show that Graves had committed a separate and independent crime from the one charged in the indictment, nor is there any indication that the jury had any knowledge that Graves was arrested, taken into custody, or even charged with any crime except the one for which he was indicted.
What the record does indicate is that Ransburgh called the police in the early morning hours of December 22, 1979, and gave a description of Graves and what he was wearing to Officer Roebuck.
Graves relies on our decision in Johnson v. State, 416 So.2d 383 (Miss. 1982), in support of his argument that proof of a crime distinct from the crime charged in the indictment is generally inadmissible. Reliance on Johnson is misplaced.
In Johnson, quoting from Woods v. State, 393 So.2d 1319 (Miss. 1981), we stated:
In Gray v. State, 351 So.2d 1342 (Miss. 1977), the Court said:
"... It is well settled in this state that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. See Smith v. State, 223 So.2d 657 (Miss. 1969), cert. denied, 397 U.S. 1030, 90 S.Ct. 1274, 25 L.Ed.2d 542 (1970); Cummings v. State, 219 So.2d 673 (Miss. 1969); cert. den. 397 U.S. 942, 90 S.Ct. 954, 25 L.Ed.2d 122 (1970). 393 So.2d at 1325 (emphasis added.)
416 So.2d at 386.
In Johnson, we found no error under this particular assignment on grounds that the evidence was admissible to show the identity of the accused, motive for the shooting, and was admissible as part of the res gestae.
The state's argument, and in our opinion correctly so, is that this testimony was an exception to the rule in that it was necessary to identify the defendant.
Furthermore, the testimony was invited by Graves' attorney during redirect examination. See Shelby v. State, 402 So.2d 338 (Miss. 1981).
There was no proof of a separate crime. The jury was never informed that Graves was charged with anything except the murder of Miller. Brown v. State, 483 So.2d 328 (Miss. 1986).
The second prong of this assignment is that Roebuck's testimony from his police report as to what Ransburgh told him Graves was wearing was hearsay. Also at issue is Roebuck's statement that "Mrs. Ransburgh told me she observed what appeared to be blood ." Graves' objection to this was sustained and he now complains that the court did not admonish the jury to disregard the statement.
We dispose of this latter argument by pointing out that the objection was sustained and, had counsel wished to have the jury instructed to disregard the statement, he should have requested the court so to do and he failed to do so. Therefore, there was no error as to the statement. Gardner v. State, 455 So.2d 796 (Miss. 1984).
As to the hearsay, it is clear that Officer Roebuck had authority to testify *565 from his police report. As we stated in Scott v. State, 446 So.2d 580 (Miss. 1984), if it appears that a witness has no present memory of an event, the witness may refresh his memory by reviewing a writing and testifying from his own memory. That is what Roebuck did.
The statement by Roebuck, furthermore, is not hearsay. It was not an out-of-court statement offered for the purpose of proving the truth of the matter asserted but was in fact only a statement as to what Ransburgh told Roebuck Graves was wearing. The statement was not offered to prove that Graves was wearing this clothing, merely that Ransburgh said he was. Gates v. State, 484 So.2d 1002, 1007-8 (Miss. 1986); and Fuselier v. State, 468 So.2d 45, 52 (Miss. 1985).
There is no merit to the first assignment of error.

II.

DID THE TRIAL COURT ERR IN ADMITTING A GREEN KNIFE AS EVIDENCE OF THE MURDER WEAPON?
First, a trial judge enjoys a considerable amount of discretion as to the relevancy and admissibility of evidence. Unless this judicial discretion is so abused as to be prejudicial to the accused, we will not reverse his ruling. Page v. State, 295 So.2d 279 (Miss. 1974); Shearer v. State, 423 So.2d 824, 826 (Miss. 1983).
Graves' objection to the admissibility of the knife is based upon the fact that one of the witnesses did not remember the knife having a leather strap on it and that it may not be the same knife that he found at the scene. This objection was overruled.
We find that the knife is admissible, and the cases cited by appellant to be unpersuasive for the following reasons: Witness Coleman testified that Graves cut him with the knife in question; Witness Miller stated that he found the knife in question at the scene of the stabbing; Witness McDonald established the chain of custody; and Witness White, who arrived at the scene immediately prior to the stabbing, and saw someone throw the knife away, stated that the knife was like a dagger with a green handle on it. That fits the description of the knife in evidence.
For the reasons stated above, this assignment of error is without merit.

III.

WAS THE REINDICTMENT OF GRAVES THE RESULT OF PROSECUTORIAL VINDICTIVENESS?
Graves was first indicted for murder on May 15, 1984, and he entered into plea bargaining with the district attorney. The district attorney recommended that the murder charge be reduced to manslaughter in the event a plea of guilty was entered. The district attorney recommended a 20-year sentence with 10 years suspended, with 5 years probation, and the sentence to run consecutive to any other sentence Graves was serving.
Graves then gave his version of the events leading to Miller's death. The court then asked Graves if he understood his sentence to be 20 years, with 10 suspended, and with 10 years to serve and it to run consecutive to any sentence Graves was serving. Graves responded that he understood his sentence to be, "If I wanted to plead guilty to manslaughter, that I would get 20 years with 10 years suspended and 10 years running with the remainder of the 15 years."
The trial court then allowed Graves all the time he needed to see if he wanted to proceed with the plea of guilty. All of this occurred on August 8, 1984, and on August 27, 1984, Graves was reindicted as an habitual criminal.
For this assignment of error, Graves relies upon North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
In Pearce, the defendant was convicted and sentenced to 12 to 15 years in prison. Several years later, his conviction was reversed because of an involuntary confession. *566 At the second trial, the defendant was again convicted and sentenced to 8 years in prison, which, when added to the time he had already served, would have amounted to a longer sentence than his sentence under the first conviction.
The United States Supreme Court in Pearce interpreted the Fourteenth Amendment as protecting, in certain situations, a defendant who is given a harsher sentence on retrial than in his first trial. It was reasoned that it would be a flagrant violation for a trial court to impose a harsher sentence on retrial merely because a defendant succeeded in setting the original conviction aside, because "penalizing those who choose to exercise constitutional rights would be patently unconstitutional. United States v. Jackson, 390 U.S. 570, 581, 20 L.Ed.2d 138, 147, 88 S.Ct. 1209." 395 U.S. at 724, 89 S.Ct. at 2080, 23 L.Ed.2d at 668.
The court went further and found that the above rule applies even if the first conviction is set aside for non-constitutional error, reasoning that appeal rights should be free and unfettered.
In order to assure the above rule being followed, the court then stated,
[W]e have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670.
Graves would have this Court apply Pearce to the situation at hand. We are not persuaded by this argument.
In Rufus v. State, 402 So.2d 874 (Miss. 1981), Rufus entered a guilty plea prior to being brought to trial and was sentenced to 25 years in prison with 13 years suspended. Rufus withdrew his guilty plea and, after a trial on the merits, was convicted and sentenced to 25 years in prison with 5 years suspended.
Rufus argued that Pearce should have applied to his situation. We affirmed the conviction of Rufus and reasoned "that the case materially differs from Pearce and that what was done here did not deprive ... Rufus of due process of law." 402 So.2d at 876. We further reasoned that when the defendant entered the guilty plea the trial court imposed the sentence without hearing the evidence adduced against him at trial.
Finally, we stated:
To adopt the position of appellant would be no more nor less than to grant leave to an indicted defendant to play games with the court; he might plead guilty, be sentenced, then withdraw his plea and demand a trial, having thus made certain in advance that no matter how the trial might turn out or what aggravating circumstances might be developed by the evidence, no greater sentence could be imposed upon him in the event of conviction. We do not believe that such a result is within the scope of the rule laid down in Pearce.

402 So.2d at 875-76.
Furthermore, in Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the United States Supreme Court had the occasion to discuss whether the due process clause of the Fourteenth Amendment is violated when a state prosecutor carries out a plea bargaining threat to reindict the accused on more serious charges if he does not plead guilty. The court reasoned that a prosecutor could do this. Although the court pointed out that the prosecutor had clearly informed the defendant, at the outset of the plea bargaining negotiations, that he would be indicted under Kentucky's recidivism statute if he did not plead guilty  and thus this case is distinguishable from the case at bar  the court nevertheless stated:
To punish a person because he has done what the law plainly allows him to *567 do is a due process violation of the most basic sort, see North Carolina v. Pearce, supra, at 738, 33 L Ed 2d 656, 89 S Ct 2072 (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." Chaffin v. Stynchcombe, supra, at 32-33, n 20, 36 L Ed 2d 714, 93 S Ct 1977. See United States v. Jackson, 390 US 570, 20 L Ed 2d 138, 88 S Ct 1209. But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.
434 U.S. at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 610-11.
This assignment of error is without merit.
THE CONVICTION OF JERRY DONNELL GRAVES OF MURDER AND HIS SENTENCE AS AN HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS WITHOUT PROBATION OR PAROLE IS AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.